UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
ANN PALAGONIA and THOMAS PALAGONIA,
Parents and Guardians of their Minor Child, ERICA
PALAGONIA, and ERICA PALAGONIA, Individually,

                                                        Plaintiffs,                <u>MEMORANDUM
OPINION AND ORDER</u>

                    -against-                                                  CV 08-0791 (ETB)

SACHEM CENTRAL SCHOOL DISTRICT, SACHEM
SCHOOL BOARD, DENISE DOLAN, individually
and in her official capacity, and PAUL STELLINO,
individually and in his official capacity,

                                                       Defendants.
----------------------------------------------------------------------------X

      Before the court is the defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose the motion, asserting that there are issues of fact that necessitate a trial. For the following reasons, defendants' motion is granted.

<u>FACTS</u>

      The minor plaintiff, Erica Palagonia ("Erica"), began attending Sachem East High School ("Sachem East") in September 2005, at the start of the ninth grade. (Def. R. 56.1 Statement ("Def. 56.1") ¶ 1; Pl. R. 56.1 Statement ("Pl. 56.1") ¶ 1.) In November 2005, Erica began having difficulty attending school due to anxiety. (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.) Around this same time, Erica began self-medicating with her mother's Xanax pills, which ultimately resulted in an addiction. (Def. 56.1 ¶¶ 5-6; Pl. 56.1 ¶¶ 5-6.)

Erica did not advise her parents of her anxiety until December 2005. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.) Erica's parents told her to do the best she could and that if she was feeling anxious, she should go to the nurse's office and take a deep breath. (Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.) Erica was not seeing any mental health professionals at this time; nor did she inform her parents that she was using drugs. (Def. 56.1 ¶ 10; Pl. 56.1 ¶ 10.) However, Erica would occasionally speak to the school psychologist, Dr. Fern Miranda, about her anxiety. (E. Palagonia Dep. 43-45.)

By January 2006, Erica was taking two to three Xanax a day while still attempting to attend school. (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.) Erica also began taking Vicodin during this time. (Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.) In February 2006, Erica was hospitalized due to an overdose of Xanax. (Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15.) Erica did not attend school regularly from November 2005 through April 2006. (Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14.)

In March and April 2006, Erica attended an outpatient drug rehabilitation program at Mather Hospital, at which time she did not attend school. (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.) Erica was ultimately ejected from the rehabilitation program for continuing to use drugs. (Def. 56.1 ¶ 17; Pl. 56.1 ¶17.) Thereafter, Erica spent three days in the inpatient psychiatric unit at Mather Hospital as part of an inpatient drug rehabilitation program. (Def. 56.1 ¶¶ 18-19; P. 56.1 ¶¶ 18-19.) Erica also began seeing her treating psychiatrist, Dr. Mala Iyer, and continued to see Dr. Iyer for monthly appointments following her release from the rehabilitation programs. (E. Palagonia 50-h Tr. 23.)

After Erica's release from the inpatient drug rehabilitation program, she was provided home teaching from April through June 2006. (Def. 56.1 ¶¶ 24-26; Pl. 56.1 ¶¶ 24-26.) At this time, defendant Paul Stellino ("Stellino") was the director of Special Education at defendant

Sachem Central School District (the "District") and was responsible for approving or denying home teaching requests. (Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) Pursuant to the District's policies, home teaching must be recommended by an outside medical provider in order to be approved. (Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.) Home teaching is not approved absent medical documentation unless a student is suspended. (Def. 56.1 ¶ 22; Pl. 56.1 ¶ 22.) According to District policy, even where there is a medical request for home teaching, it will not be approved if it does not include a treatment plan. (Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23.) While receiving home teaching at the end of the 2005/2006 school year, Erica maintained monthly treatment sessions with Dr. Iyer and also began seeing a psychotherapist, Barbara O'Brien, on a weekly basis. (E. Palagonia 50-h Tr. 23-24, 54.)

Erica returned to school in September 2006, at the start of her tenth grade year. (Def. 56.1 ¶ 30; E. Palagonia Dep. 56.) By letters dated August 28, 2006 and September 5, 2006, Dr. Iyer recommended that Erica receive home teaching for the first academic quarter due to her anxiety disorder. (Pl. Ex. 1.)[1] Barbara O'Brien, Erica's psychotherapist, also recommended that Erica receive home teaching in a letter dated September 6, 2006. (Pl. Ex. 1.) Dr. Miranda, who conducted one or two home visits to Erica around this time, spoke with Stellino and defendant Denise Dolan ("Dolan"), the Assistant Principal at Sachem East, concerning the recommendations that Erica continue to receive home teaching. (Def. 56.1 ¶¶ 11, 29, 31; Pl. 56.1 ¶ 11, 29, 31.) Dr. Miranda also attempted to communicate with Dr. Iyer, but her phone calls were not returned. (Miranda Dep. 17-18, 45.) On or about September 18, 2006, Erica began

---

[1] Both plaintiff and defendant have labeled their exhibits with alphabetical characters. To avoid confusion, the Court has changed plaintiff's exhibits to numeric characters. Accordingly, plaintiff's Exhibit A has been changed to Exhibit 1 and so on.

receiving home teaching again. (Def. 56.1 ¶ 32; Pl. 56.1 ¶ 32.)

On or about October 24, 2006, plaintiffs, through a note from Dr. Iyer, requested an additional four weeks of home teaching for Erica. (Def. 56.1 ¶ 33; Pl. 56.1 ¶ 33; Def. Ex. H.) The request was denied by the District and Erica's home teaching was terminated on October 27, 2006. (Def. 56.1 ¶¶ 32-33; Pl. 56.1 ¶¶ 32-33.) On or about November 8, 2006, plaintiffs, through a note from Dr. Iyer, again requested additional home teaching for Erica. (Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34; Def. Ex. I; Pl. Ex. 1.) An additional two weeks of home teaching was approved by the District. (Def. Ex. ¶ 34; Pl. 56.1 ¶ 34.) Erica's home teaching was terminated on November 27, 2006. (Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35.)

Erica did not return to school upon the termination of her home teaching. (Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36.) Dr. Miranda and Dolan spoke about contacting Child Protective Services ("CPS") at that point and Dr. Miranda advised plaintiffs that CPS would be called. (Def. 56.1 ¶¶ 37-38; Pl 56.1 ¶¶ 37-38.) CPS was contacted concerning Erica in November 2006, but they declined to take the case. (Def. 56.1 ¶ 39; Pl. 56.1 ¶ 39.)

Despite the District's attempts to assist Erica in returning to school, she stopped attending completely. (Def. 56.1 ¶¶ 41-42; Pl. 56.1 ¶¶ 41-42; Dolan Dep. 48 (stating that they offered Erica a "truncated day, which was a reduced schedule, so that she could slowly acclimate herself back"); Def. Ex. K ("Strategies for Success" dated September 18, 2006, outlining an approach for reintegrating Erica back to school.)) By letter dated March 7, 2007, Dr. Iyer advised the District that Erica's symptoms "seem to have worsened" and "strongly recommend[ed] temporary home tutoring for the next four weeks." (Def. Ex. L; Pl. Ex. 1.) On March 30, 2007, Stellino approved additional home teaching for Erica, conditioned upon her daily attendance at

school for a period of two weeks, during which Erica would be required to make an appearance at school each day, if only for a few minutes. (Def. 56.1 ¶ 43; Pl. 56.1 ¶ 43.) Plaintiff Ann Palagonia, Erica's mother, subsequently telephoned Dr. Miranda to cancel the arrangement because Erica refused to attend school. (Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44.)

On April 19, 2007, the District's attendance officer visited plaintiffs' residence. (Def. 56.1 ¶ 45; Pl. 56.1 ¶ 45.) No one was home at the time so the attendance officer left a note requesting that Erica's parents contact her regarding Erica. (Def. 56.1 ¶ 45; Pl. 56.1 ¶ 45.) The next day, on April 20, 2007, the District again contacted CPS. (Def. 56.1 ¶ 46; Pl. 56.1 ¶ 46.) CPS visited the plaintiffs' home in April 2007 and met with Erica. (Def. 56.1 ¶ 47; Pl. 56.1 ¶ 47.) The CPS caseworker, Luis Polanco, observed the plaintiffs' home and spoke with Erica and her parents. (Def. 56.1 ¶ 47; Pl. 56.1 ¶ 47.) By letter dated June 20, 2007, CPS advised Dolan that the District's report was "deemed 'unfounded.'" (Pl. Ex. 6.)

Erica did not return to school for the remainder of the 2006/2007 school year. (Def. 56.1 ¶ 48; Pl. 56.1 ¶ 48.) By letter dated May 15, 2007, Dr. Iyer again recommended that Erica receive home teaching. (Pl. Ex. 1.) Around the same time, plaintiffs' attorney, David Gordon, sent a letter to the District requesting that a Committee on Special Education ("CSE") be convened to evaluate Erica.[2] (Pl. Ex. 8.) On July 9, 2007, a CSE concerning Erica was convened. (Def. 56.1 ¶ 49; Pl. 56.1 ¶ 49.) The CSE found that Erica did not have a disability and plaintiffs were advised of the finding during the CSE meeting. (Def. 56.1 ¶ 50; Pl. 56.1 ¶ 50; Def. Ex. N.) That same day, July 9, 2007, Stellino mailed plaintiffs a copy of the Procedural

---

[2] Stellino testified at his deposition that a CSE was already in the process of being convened to evaluate Erica before the District received Mr. Gordon's letter. (Stellino Dep. 40.) According to Stellino, the referral process for the CSE began in March or April 2007. (Id.)

Safeguards Notice of their Due Process Rights, as provided by 20 U.S.C. § 1415. (Def. 56.1 ¶ 51; Pl. 56.1 ¶ 51; Def. Ex. N.)

Plaintiffs commenced this action on February 26, 2008 and amended their Complaint on April 30, 2009, alleging the following claims against defendants: (1) violation of their equal protection rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) municipal liability, pursuant to Section 1983; (3) disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq.; (3) violation of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq.; (4) retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq.; (5) violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; (6) violation of Article 78 of the New York Civil Practice Law and Rules ("CPLR"); (7) falsely reporting an incident in violation of New York Penal Law § 240.55 (alleged solely against defendant Dolan); and (8) intentional infliction of emotional distress. During a pre-motion conference with the Court on July 6, 2011, plaintiffs withdrew their causes of action pursuant to New York's CPLR Article 78 and the New York Penal Law. Defendants now move for summary judgment with respect to plaintiffs' remaining claims.[3]

---

[3] As defendants' Reply Memorandum of Law points out, plaintiffs failed to oppose defendants' motion for summary judgment with respect to the following causes of action: (1) the New York Human Rights Law claim; (2) the IDEA claim against defendants Dolan and Stellino; and (3) the intentional infliction of emotional distress claim against the District and defendant Sachem School Board. (Pl. Reply Mem. of Law 1.) Accordingly, the Court deems those claims abandoned by plaintiffs. See Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where

the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

Summary judgment should not be regarded as a procedural shortcut, but rather as an integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327. Rule 56 must be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those persons "opposing such claims and defenses to demonstrate, . . . prior to trial, that the claims and defenses have no factual basis." Id. By its terms, Rule 56 does not require that a trial judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id

II.     The IDEA, ADA and Rehabilitation Act Claims

Defendants assert that plaintiffs' IDEA, ADA, and Rehabilitation Act claims fail as a matter of law because plaintiffs chose not to exhaust their administrative remedies before commencing this action.[4] In response, plaintiffs argue that exhaustion should be excused here on

---

[4] Although defendants assert that the Section 1983 claims are also insufficient due to the plaintiffs' failure to exhaust their administrative remedies, they also assert independent grounds as to why the those claims fail as a matter of law, which the Court finds more persuasive.

the grounds of futility.

      A.      Exhaustion of Administrative Remedies

The purpose of the IDEA is to provide disabled children with a "free appropriate public education" in the least restrictive appropriate environment. Polera v. Bd. of Educ., 288 F.3d 478, 481 (2d Cir. 2002) (citing 20 U.S.C. §§ 1400(d)(1)(A), 1401(8), 1411(a)(1) & 1412 (a)(5)(A)). Under the IDEA, parents of disabled students are guaranteed an array of procedural safeguards, including the right "to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 244 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)). New York has a "two-tier administrative system" for review of individual education programs:

> First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department.

Cave, 514 F.3d at 244 (citing Heldman ex rel. v. Sobol, 962 F.2d 148, 152 (2d Cir. 1992)) (additional citation omitted).

Only after both of these administrative procedures have been exhausted can a party file suit in either federal or state court. See Cave, 514 F.3d at 245 (citing 20 U.S.C. § 1415(i)(2)(A)); Polera, 288 F.3d at 483 ("Although the IDEA provides for a federal cause of action . . ., it imposes a broadly applicable requirement that plaintiffs first exhaust administrative remedies."); Buffolino v. Bd. of Educ., 729 F. Supp. 240, 244 (E.D.N.Y. 1990) ("If a party has exhausted both

---

Accordingly, the Section 1983 claims will be discussed infra.

. . . administrative remedies, namely the impartial hearing and the administrative appeal, and the party remains aggrieved, a civil lawsuit may be commenced in either state court or federal district court . . . ."). "[F]ailure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." Polera, 288 F.3d at 483 (citing Hope v. Cortines, 69 F.3d 687, 688 (2d Cir. 1995)).

"Importantly, complainants must overcome this significant procedural hurdle not only when they wish to file suit under the IDEA itself, but also whenever they assert claims for relief <u>available</u> under the IDEA, regardless of the statutory basis of their complaint." Cave, 514 F.3d at 246 (emphasis in original). As the IDEA explicitly mandates:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 <u>et seq.</u>], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 <u>et seq.</u>], or other Federal laws protecting the rights of children with disabilities, except that <u>before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.</u>

20 U.S.C. § 1415(l) (alteration in original) (emphasis in original). Accordingly, plaintiffs are also required to exhaust their administrative remedies before filing suit under the ADA, the Rehabilitation Act and Section 1983 if the action seeks relief that is available under the IDEA. See Cave, 514 F.3d at 248-49; Polera, 288 F.3d at 483; Buffolino, 729 F. Supp. at 245.

Plaintiffs here solely seek monetary damages - both compensatory and punitive. There is no request for injunctive relief in the Amended Complaint. In Polera v. Bd. of Educ., 288 F.3d 478 (2d Cir. 2002), the Second Circuit specifically found that "monetary damages are not

available under the IDEA" because its purpose "is to provide educational services, not compensation for personal injury, and a damages remedy . . . is fundamentally inconsistent with this goal." Id. at 486. However, the Circuit went on to conclude that a prayer for damages does not enable a plaintiff to "sidestep the exhaustion requirement of the IDEA," emphasizing that the "theory behind the grievance may activate the IDEA process, even if the plaintiff wants a form of relief that the IDEA does not supply." Id. at 488 (quotation omitted). Courts in the Second Circuit have required plaintiffs to exhaust their administrative remedies even where damages were unavailable through the administrative process, finding that merely tacking on a request for money damages does not permit a plaintiff to evade the IDEA's exhaustion requirement. See id. at 487 (collecting cases).

The plaintiffs' claims here are precisely the same as that made by the plaintiff in Polera: "that a school district failed to provide [them] with appropriate educational services." Id. at 488. "Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages." Id. Accordingly, absent an applicable exception, discussed infra, plaintiffs were required to exhaust their administrative remedies under the IDEA prior to commencing this action.

B. Exceptions to the Exhaustion Requirement

Plaintiffs do not dispute that they were required to exhaust their administrative remedies under the IDEA before filing the within lawsuit. Rather, plaintiffs argue that exhaustion should be excused on the basis of futility. According to plaintiffs, "[f]or the Palagonia family to attempt any further dealings with these defendants based upon their

demonstrated behavior would not just be futile, but would simply provide these defendants a chance to engage in further obnoxious bullying conduct." (Pl. Mem. of Law 18.)

The Second Circuit has held that the IDEA's exhaustion requirement "will be excused where it would be futile, the agency has adopted a policy or practice of general applicability that is contrary to law, or it is improbable that adequate relief is available in the administrative forum, . . . or where . . . the parents have not been notified that such remedies were available to them." Weixel v. Bd. of Educ., 287 F.3d 138, 149 (2d Cir. 2002) (quotations omitted). Plaintiffs bear the burden of demonstrating futility. See Polera, 288 F.3d at 488 n.8 (citing Honig v. Doe, 484 U.S. 305, 327 (1988)). While plaintiffs cite all of the foregoing exceptions as bases upon which their failure to exhaust administrative remedies should be excused, the seem to rely mainly on the fact that they were not notified of their due process rights until after a CSE meeting was convened in July 2007, more than ten months after defendants were provided with notice of Erica's disabilities. (Def. Mem. of Law 17.)

Plaintiffs' cite to the Second Circuit's decision in Weixel v. Board of Education, 287 F.3d 138 (2d Cir. 2002), as support for their position, arguing that the facts of Weixel are identical to those here. However, a reading of the Weixel case demonstrates several glaring differences that plaintiffs have conveniently chosen to ignore.

First, Weixel was decided in the context of a motion to dismiss, wherein the court accepted all of the allegations stated in the plaintiffs' pro se complaint as true and construed them liberally. See id. at 141. Second, in Weixel, the school officials allegedly engaged in extremely egregious behavior, including, inter alia: (1) contacting the infant plaintiff's doctors and urging them to change their diagnoses; (2) falsely claiming the infant plaintiff had a personality

-12-

disorder; and (3) having security escort the infant plaintiff's mother from the school when she went to gather information on her daughter's curriculum. See id. at 143. Finally, and most importantly, a CSE meeting was never convened in Weixel and the infant plaintiff's parents were never informed of their due process rights. As a result, the court found that plaintiffs were excused from having to exhaust their administrative remedies "because the failure of the defendants to notify plaintiffs of their procedural rights under the IDEA 'deprived [them] of the opportunity to take advantage of the procedural safeguards offered by the statute.'" Id. at 149 (quoting Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 147 (2d Cir. 1983)) (additional citation omitted) (alteration in original).

Here, however, a CSE meeting was convened with respect to Erica in July 2007. While plaintiffs' counsel claims the CSE meeting was only convened after he "demanded one in writing," (Pl. Mem. of Law 17), Stellino testified at his deposition that the referral process to the CSE with respect to Erica had begun before the District received plaintiffs' counsel's "demand." (Stellino Dep. 40). Regardless at whose request the CSE meeting was convened, the fact remains that a CSE meeting was in fact held and the CSE found Erica not to be disabled. It is undisputed that on the same day of the CSE's decision, plaintiffs were provided with a copy of the due process rights available to them, as required under the IDEA. (Def. Ex. N.)

As the procedural safeguards notice advised plaintiffs, they had the right to "request an impartial hearing relating to the identification, evaluation or educational placement of [their] child or the provision of a free appropriate public education to [their] child." (Id. 4.) The notice further advised plaintiffs of their rights at the impartial hearing and that they also had the right to seek review of the impartial hearing officer's decision by the State Review Officer. (Id. 5-6.)

Finally, the notice advised plaintiffs that they could appeal the State Review Officer's decision in either state or federal court. (Id. 6.)

Plaintiffs chose not to avail themselves of the rights and remedies contained in the procedural safeguards notice and instead came directly to federal court. Notwithstanding the fact that plaintiffs were aware of the administrative remedies available to them, plaintiffs assert that they should not be bound by the IDEA's exhaustion requirement. However, plaintiffs have failed to present any evidence that exhausting their administrative remedies would have been futile. The simple fact is that plaintiffs were aware of their due process rights and chose not to exercise them.

For the foregoing reasons, the Court finds that plaintiffs have failed to exhaust their administrative remedies under the IDEA prior to filing this action and the Court therefore lacks subject matter jurisdiction over plaintiffs' claims brought pursuant to the IDEA, the ADA and the Rehabilitation Act. Accordingly, defendants' motion for summary judgment is granted with respect to those claims.

III.   The Section 1983 Claims

Plaintiffs assert two claims pursuant to Section 1983: (1) that defendants violated plaintiffs' equal protection rights under the Fourteenth Amendment and (2) that defendants have engaged in a continuing pattern and practice of deliberate indifference towards plaintiffs' constitutional and statutory rights. (Am. Compl. ¶¶ 81-82.) Defendants move for summary judgment with respect to both Section 1983 claims.

A.   Equal Protection

The Equal Protection clause mandates that government agencies treat "all similarly situated people alike." Harlen Assoc. v. Incorporated Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). While the typical equal protection claim involves "discrimination against people based on their membership in a vulnerable class," Harlen Assoc., 273 F.3d at 499, the Second Circuit and the Supreme Court have also recognized "class of one" claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). This is the type of equal protection claim alleged herein by plaintiffs.

To prevail on a "selective enforcement" claim, plaintiffs are required to demonstrate both (1) that "they were treated differently from other similarly situated individuals," and (2) that the "differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Harlen Assoc., 273 F.3d at 499 (quoting LaTrieste Rest. & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)) (additional citation omitted). "To be 'similarly situated,' the individuals with whom [plaintiffs] attempt[] to compare [themselves] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Here, plaintiff's Amended Complaint alleges that defendants "have engaged in actions and abuses" that deprived plaintiffs of their equal protection rights under the Fourteenth

Amendment. (Am. Compl. ¶ 81.) According to plaintiffs, Erica "was treated differently from any other student suffering from a disability as she was denied her rights under the law" and "defendants engaged in a pattern of bad-faith intent to injure her and her parents and punish them for exercising those rights." (Pl. Mem. of Law 20.) Yet, plaintiffs offer no facts to support their claim that Erica was treated differently from any other student with a disability attending Sachem East. In fact, plaintiffs have failed to identify anyone - let alone anyone similarly situated to Erica - that received more favorable treatment than she did. Instead, plaintiffs simply allege that defendants have engaged in a pattern of "intentionally inhibit[ing]" plaintiffs' rights. (Pl. Mem. of Law 22.) "Such sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact." Shumway, 118 F.3d at 65 (citing Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir. 1965)).

Accordingly, plaintiffs' equal protection claim fails as a matter of law and defendants' motion for summary judgment is granted with respect to that claim.

B. Municipal Liability

In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff "must show that the violation of his constitutional rights resulted from a municipal custom or policy." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991) (citing cases); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Respondeat superior may not serve as the basis for imposing municipal liability. See Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold

municipalities liable under a theory of respondeat superior."); Ricciuti, 941 F.2d at 122 ("A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee on the basis of respondeat superior."); Allen v. City of Yonkers, 803 F. Supp. 679, 683 (S.D.N.Y. 1992) ("Respondeat superior does not apply to the liability of municipal entities . . . ."). The plaintiff in an action brought pursuant to 42 U.S.C. § 1983 bears the burden of establishing municipal liability. See Rubio v. County of Suffolk, No. 01-CV-1806, 2007 U.S. Dist. LEXIS 75344, at *6-7 (E.D.N.Y. Oct. 9, 2007) (citing Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)).

In seeking to hold a municipality liable under § 1983, a plaintiff is not required to demonstrate that the municipality had "an explicitly stated rule or regulation." Ricciuti, 941 F.2d at 123 (citing Villante v. Dep't of Corr., 786 F.2d 516, 519 (2d Cir. 1986)). Rather, "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing Turpin v. Mailet, 619 F.2d 196, 200 (2d Cir. 1980)). For example, such an inference may be drawn where the evidence presented demonstrates that a municipality failed to train its employees such that the failure "amounts to deliberate indifference to the rights of persons with whom the [municipal actor] comes into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989)  However, "[t]he mere assertion that there exists such a policy or custom, absent specific allegations of fact tending to support such an inference, is insufficient." Batista v. City of New York, No. 05-CV-8444, 2007 U.S. Dist. LEXIS 71905, at *14 (S.D.N.Y. Sept. 24, 2007) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Moreover, "allegations of a single, isolated, incident of [municipal] misconduct will not suffice" for purposes of demonstrating the existence of a

municipal policy. Aguilera v. County of Nassau, 425 F. Supp. 2d 320, 324 (E.D.N.Y. 2006); see also Dwares, 985 F.2d at 100 ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.").

Where there is no underlying violation of a plaintiff's constitutional rights, any claim for municipal liability necessarily fails as well. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a Monell claim); Claudio v. Sawyer, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("Under Second Circuit case law, a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor."); Donelli v. County of Sullivan, No. 07 Civ. 2157, 2009 U.S. Dist. LEXIS 66994, at *34 (S.D.N.Y. July 31, 2009) (stating that "there can be no municipal liability . . . because . . . the plaintiffs have failed to state a claim for any underlying constitutional violation"). Because the Court finds that plaintiffs have not established an underlying constitutional violation in connection with their equal protection claim, their Monell claim for deliberate indifference fails as a matter of law.[5]

Accordingly, defendants' motion for summary judgment with respect to plaintiffs' Section 1983 claims is granted.[6]

---

[5] The same conclusion results with respect to the individual defendants. "To establish individual liability in a § 1983 action, a plaintiff must 'show that [an] official, acting under color of state law, caused the deprivation of a federal right.'" Coon v. Town of Springfield, 404 F.3d 683, 686 (2d Cir. 2005) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)) (alteration in original). Because plaintiffs have not established the violation of any federal right here, there can be no liability under Section 1983 for defendants Dolan and Stellino.

[6] Since the Court finds that plaintiffs have failed to establish a constitutional violation, it need not reach the issue of whether the individual defendants are entitled to qualified immunity

IV.     Intentional Infliction of Emotional Distress

As stated supra, plaintiffs appear to have abandoned their intentional infliction of emotional distress claim against the District and the Sachem School Board.  Accordingly, only the intentional infliction of emotional distress claim with respect to defendants Dolan and Stellino remains.

However, having found that all of Plaintiffs' federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action.  Although the Court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claims, see 28 U.S.C. § 1367(a), it declines to do so.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").  "While discovery has been completed and the instant case proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if [plaintiffs'] pendent claim[] [was] brought in state court."  Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007) (declining to exercise supplemental jurisdiction over remaining state claim after summary judgment was granted to defendants on plaintiff's federal claim) (citation omitted).  Moreover, "'[s]ince [New York's CPLR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiffs will not be prejudiced by the dismissal of their [state law] claims."  Tishman, 2007 U.S. Dist. LEXIS 85588,

---

pursuant to Social Services Law § 419, as asserted by defendants.

at *29 (quoting <u>Trinidad v. N.Y City Dep't of Corr.</u>, 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006)) (alterations in original) (additional citations omitted).

Accordingly, plaintiffs' intentional infliction of emotional distress claim, as alleged against defendants Dolan and Stellino, is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED and plaintiffs' Amended Complaint is dismissed in its entirety.

**SO ORDERED:**

Dated: Central Islip, New York
February 14, 2012

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge